[Civ. No. 30020. Second Dist., Div. Two. Jan. 4, 1967.]

CHARLES F. MORSE et al., Plaintiffs and Appellants, v. COUNTY OF SAN LUIS OBISPO et al., Defendants and Respondents.

Sweeney, Irwin, Cozy & Foye, Sweeney, Cozy & Foye, and William R. Sweeney for Plaintiffs and Appellants.

James W. Powell, District Attorney, and Harold Johnson for Defendants and Respondents.

FLEMING, J.—Morse and Seal appeal a judgment of dismissal after a demurrer to their complaint was sustained without leave to amend for failure to state a cause of action.

Plaintiffs' complaint charged that the rezoning of the area in the vicinity of a county airport resulted in the inverse condemnation of their property by the county, that in purchasing their property they acted in reliance on a zoning ordinance which stated their land would be rezoned for subdivision purposes on request, that the individual defendants responsible for rezoning the property abused their discretion and acted negligently.

The sole issue on appeal is whether Morse and Seal stated a cause of action against the defendants in their complaint.

Plaintiffs' land lies in an area of small farms about four miles from the City of Paso Robles and one mile from the Paso Robles airport operated by the County of San Luis

Obispo. The land was zoned A-1 at the time they bought it, a zoning which permits a density of one residential dwelling per acre. Plaintiffs submitted a tentative subdivision map which proposed R-1 uses and requested the county planning commission to rezone their property R-1, a zoning under which the maximum allowable density of residential structures per acre would be increased from one to five. According to the briefs, the planning commission undertook to review the zoning of the entire area in the general vicinity of the Paso Robles airport, and at the conclusion of its public hearing determined to decrease rather than increase the allowable density of land use in the area by recommending a zoning of A-1-5, a classification which requires five acres for a single-family dwelling. The board of supervisors approved the commission's recommendation and rezoned the area of plaintiffs' property to A-1-5.

1. The county zoning ordinance on which plaintiffs purport to have relied reads:

"It is the intention of this section to encourage proper development by promoting and retaining the agricultural use of property where subdivision or urban developments are imminent and until it is properly subdivided under current County Subdivision Ordinance. Approval of development plans or tentative and final subdivision maps constitute sufficient justification for the County Planning Commission to consider the appropriate rezoning of areas currently designated as A-1."

Although plaintiffs contend this language assured them they could obtain an R-1 classification by applying for it, the language, as we read it, did no more than suggest that applications for rezoning for subdivision purposes would be given consideration in relation to the general development of the community. The ordinance did not bind the supervisors to grant applications for rezoning, nor did it represent by word or inference they would do so. Plaintiffs are apparently attempting to recover profits they might have earned if they had been successful in getting their land rezoned to permit subdivision into small residential lots, but landowners have no vested right in existing or anticipated zoning ordinances. (*Anderson* v. *City Council*, 229 Cal.App.2d 79, 88-90 [ 40 Cal. Rptr. 41].) A purchaser of land merely acquires a right to continue a use instituted before the enactment of a more restrictive zoning. Public entities are not bound to reimburse individuals for losses due to changes in zoning,

for within the limits of the police power ''some uncompensated hardships must be borne by individuals as the price of living in a modern enlightened and progressive community.'' (*Metro Realty* v. *County of El Dorado,* 222 Cal.App.2d 508, 518 [35 Cal.Rptr. 480].)

2. Because the planning commission took the occasion of plaintiffs' application to consider the zoning of the entire area, Morse and Seal suggest confiscation, subterfuge, official abuse, and negligence. In effect, they claim that any rezoning of land near an airport which reduces allowable density should be presumed as a matter of law an invasion of property rights through the uncompensated taking of an air easement for purposes of flight. Yet the intendments of zoning law are all the other way, and zoning regulations are presumed to be valid exercises of the police power which further the public safety and the general welfare. Unless the complaining party pleads facts to show that an ordinance is unreasonable as a matter of law a court will not presume the invalidity of a zoning ordinance or its adoption or consider the substitution of its judgment on zoning for that of the public authority. (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453 [202 P.2d 38, 7 A.L.R.2d 990]; *McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879 [264 P.2d 932]; *Robinson* v. *City of Los Angeles,* 146 Cal.App.2d 810 [304 P.2d 814].)

 3. On the question of a taking of their property for public purposes, Morse and Seal have failed to set out facts in their complaint to show that the ordinance was a property-taking device rather than a regulation of the use of land. They have sought damages of $1,066,000 for the rezoning of the general area in which they own land, but have pleaded no activity by the county or its agents from which a taking of their property for public use can be inferred. Absent any showing to the contrary, we are entitled to presume that the decision of the county to preserve the agricultural nature of the area and to deny an intensification of habitation near the airport was a reasonable exercise of the zoning power designed to prevent urban sprawl and to forestall the development of residential zones in areas of the county susceptible to excessive noise or above-average hazards. (*Smith* v. *County of Santa Barbara,* 243 Cal.App.2d 126 [52 Cal.Rptr. 292].)

Plaintiffs cite *Sneed* v. *County of Riverside,* 218 Cal.App.2d 205 [32 Cal.Rptr. 318], in support of their argument that this rezoning constituted a taking of private property for public use without compensation. In *Sneed,* the County of

Riverside enacted an ordinance imposing height restrictions on all structures on certain property, the effect of which was to create an easement in the airspace above plaintiff's property for use as an approach zone to the county airport. Under the ordinance the maximum height limits on Sneed's land directly adjoining the runway had been lowered to four feet, less than the height of existing structures on the land. Large numbers of aircraft took off and landed at the airport by flying at low altitudes over his property. The basic issue, according to the court was whether the Riverside ordinance was a height-limit ordinance authorized by the police power or whether in reality it created an air easement over plaintiff's property without the payment of compensation. After distinguishing between municipal regulations which restrict or destroy certain rights indigenous to the private ownership of property (noncompensable losses) and regulations which transfer those rights to public enjoyment (compensable takings). the court concluded that a regulation which lowers the height of existing buildings within the approach patterns of an airport contemplates a public use of airspace above private land, in effect an air easement, for which compensation must be paid.

The present zoning ordinance, unlike that in *Sneed* v. *County of Riverside*, 218 Cal.App.2d 205 [32 Cal.Rptr. 318], did not appropriate the use of airspace above plaintiffs' property by creating restrictions on height, nor did it attempt to anticipate condemnation by spot-zoning plaintiffs' land, in the manner held invalid in *Kissinger* v. *City of Los Angeles*. 161 Cal.App.2d 454 [327 P.2d 10]. So far as the pleadings disclose, the reclassification neither resulted in the use of plaintiffs' airspace for public purposes nor did it take away plaintiffs' right to continue the existing use of the property. Plaintiffs' property was already in an area zoned for agricultural purposes, and the new zoning permitted the continuation of that use. ▇ Plaintiffs' claim of a taking boils down to an assertion that the county passed the ordinance in order to keep down land values in the area and permit a cheap acquisition of their property for airport purposes sometime in the future. But the proximity of a public airport to plaintiffs' land is not enough from which to infer that a zoning classification has been adopted as a device to acquire property cheaply for airport purposes. (Cf. *Hilltop Properties, Inc.* v. *State of California*. 233 Cal.App.2d 349, 358-361 [43 Cal.Rptr. 605].) ▇ Nor is it the province of a court to speculate on future intentions of a public entity and

allow recovery in inverse condemnation for a taking yet to occur. (*Hilltop Properties, Inc. v. State of California, supra.*) The judgment of dismissal is affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied January 27, 1967, and on February 3, 1967, the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied February 28, 1967.